# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

**BRANCH BANKING AND TRUST COMPANY,**

      **Plaintiff,**

**v.**                                                               **Case No:   6:13-cv-1983-Orl-31TBS**

**NATIONAL FINANCIAL SERVICES, LLC and BETTY ROGERS,**

      **Defendants.**

## ORDER

This matter is before the Court on Branch Banking and Trust Company's ("BB&T") Motion to Dismiss the Counterclaim (Doc. 21) and responsive filings;[1] BB&T's Motion to Strike Affirmative Defenses in Rogers' Answer (Doc. 23) and responsive filings;[2] and BB&T's Motion to Strike the Jury Demand (Doc. 24) and responsive filings.[3]

### I.   Background

This matter arises out of a loan issued by Colonial Bank ("Colonial") to Rogers prior to the 2009 collapse of Colonial and subsequent receivership by the Federal Deposit Insurance Corporation

---

[1] The responsive filings include Rogers' Response in Opposition to the Motion to Dismiss (Doc. 26), and BB&T's Reply in Support of the Motion to Dismiss (Doc. 37).

[2] The responsive filings include Rogers' Response in Opposition to the Motion to Strike Affirmative Defenses (Doc. 31) and BB&T's Reply in Support of the Motion to Strike Affirmative Defenses (Doc. 38).

[3] The responsive filings include Rogers' Response in Opposition to the Motion to Strike the Jury Demand (Doc. 30) and BB&T's Reply in Support of the Motion to Strike the Jury Demand (Doc. 39).

("FDIC"). After the FDIC became receiver, BB&T acquired Colonial's assets[4] that purportedly include the relevant papers underlying the loans to Rogers. BB&T is now pursuing this action on one of the two loans. The loan at issue is a $600,000 line of credit ("Credit") that was documented by a promissory note ("Note") (Doc. 1-5) and secured by a pledge of Rogers' investment account[5] and annuity policy (the consumer pledge agreement is the "Pledge") (Doc. 1-6[6]). The other loan was for the purchase of commercial real estate and was secured by a mortgage on that property as well as Rogers' other assets. Both were entered into around the same time and were part of the same series of discussions between Rogers and Colonial.

The loans were not for Rogers individually, rather they were for her daughter's business, Tyelle Enterprises, Inc. ("Tyelle"), which operated a tanning salon and was seeking to expand into a full day spa. Tyelle, however, was operating at a loss and having difficulty securing financing for the expansion. According to Rogers, representatives of Colonial discussed taking out a line of credit for Tyelle's expansion which could be secured by Rogers' investment account and her annuity insurance policy. Prior to finalizing the Credit, a branch manager for Colonial allegedly approached Rogers to discuss Tyelle purchasing a business condominium so it would not have to lease property. The Colonial manager "suggested to Defendant that her daughter's business should relocate to this business condominium so that it might own its own facility rather than lease." (Doc. 15 at 6-7). Colonial offered a separate loan to purchase the commercial property, which was secured in part by

---

[4] Judicial Notice has been taken of the Purchase and Assumption Agreement between FDIC and BB&T. (Doc. 32).

[5] The investment account referenced by the Pledge is held by Defendant National Financial Services, LLC.

[6] The operative document in this case is the second of two pledges. (*Compare* Docs. 1-4; 1-6).

a mortgage on the property. Ultimately, neither Tyelle nor Rogers could service either of the loans, and BB&T foreclosed on the real estate,[7] caused the insurance annuity to be surrendered, and is now pursuing this action on the Note and remaining collateral, the investment account.

Several of Rogers' affirmative defenses and her counterclaim are predicated on the idea that Colonial breached an obligation to provide provident loans to her. Her theory is based on the fact that the condominium Tyelle purchased was financed by Colonial and it was failing, thus Colonial received a secret benefit from Tyelle's purchase of the condominium without disclosing its interest. Most of the issues presented in the Motion to Dismiss and the Motions to Strike turn on whether the allegations support application of the "special circumstances" doctrine under Florida law which can expand a borrower/lender relationship to include greater duties on the lender than a standard lender/borrower relationship.

## II. Standards

### a. Motion to Dismiss

In ruling on a motion to dismiss, the Court must view the complaint in the light most favorable to the Plaintiff, *see, e.g.*, *Jackson v. Okaloosa County, Fla.*, 21 F.3d 1531, 1534 (11th Cir. 1994), and must limit its consideration to the pleadings and any exhibits attached thereto. Fed. R. Civ. P. 10(c); *see also GSW, Inc. v. Long County, Ga.*, 999 F.2d 1508, 1510 (11th Cir. 1993). The Court will liberally construe the complaint's allegations in the Plaintiff's favor. *Jenkins v. McKeithen*, 395 U.S. 411, 421 (1969). However, "conclusory allegations, unwarranted factual

---

[7] The pleadings assert that the real estate foreclosure action was brought in the Circuit Court for the Eighteenth Judicial Circuit in and for Brevard County, Florida, case number 2011-AC-113274. Because that case addressed the loan on the real property, while this case is addressing the business loan, the foreclosure matters do not impact the outcome of this case, the circumstances surrounding the creation of the real estate loan, however, do impact this case.

deductions or legal conclusions masquerading as facts will not prevent dismissal." *Davila v. Delta Air Lines, Inc.*, 326 F.3d 1183, 1185 (11th Cir. 2003).

In reviewing a complaint on a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), "courts must be mindful that the Federal Rules require only that the complaint contain 'a short and plain statement of the claim showing that the pleader is entitled to relief.' " *U.S. v. Baxter Intern., Inc.*, 345 F.3d 866, 880 (11th Cir. 2003) (citing Fed. R. Civ. P. 8(a)). This is a liberal pleading requirement, one that does not require a plaintiff to plead with particularity every element of a cause of action. *Roe v. Aware Woman Ctr.for Choice, Inc.*, 253 F.3d 678, 683 (11th Cir. 2001). However, a plaintiff's obligation to provide the grounds for his or her entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 554-555 (2007). The complaint's factual allegations "must be enough to raise a right to relief above the speculative level," *Id.* at 555, and cross "the line from conceivable to plausible." *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1950-1951 (2009).

### b. Motions to Strike

Motions to strike are employed "to clean up the pleadings, streamline litigation, and avoid unnecessary forays into immaterial matters." *McInerney v. Moyer Lumber & Hardware, Inc.*, 244 F. Supp. 2d 393, 402 (E.D. Pa. 2002). The Court may "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). Motions to strike are generally disfavored by the courts and should not be granted unless the material sought to be stricken is insufficient as a matter of law. *Guarantee Ins. Co., v. Brand Mgmt. Service, Inc.*, No. 12-61670-CIV, 2013 WL 4496510 * 2 (S.D. Fla. Aug. 26, 2013); *Guididas v. Community National Bank Corp.*, No. 8:11-cv-2545-T-30TBM, 2013 WL 230243 * 1 (M.D. Fla. Jan. 22, 2013).

The Court should "not exercise its discretion under the rule to strike a pleading unless the matter sought to be omitted has no possible relationship to the controversy, may confuse the issues, or otherwise prejudice a party." *Reyher v. Trans World Airlines, Inc.*, 881 F. Supp. 574, 576 (M.D. Fla. 1995).

**III. Analysis**

    **a. Motion to Dismiss Counterclaim**

The central theory of Rogers' counterclaim is that BB&T's predecessor, Colonial, created and breached its duty to her because it financed the commercial property where Tyelle purchased the condominium. Specifically, Rogers asserts that Colonial encouraged her to cause Tyelle to purchase the condominium without disclosing the fact that Colonial would secretly benefit from the transaction thereby exposing her to the risks of the loan. (*See* Docs. 15 at 11; 26 at 2-3). In this case there are no allegations that there was an express declaration of a fiduciary relationship, so if there was a fiduciary relationship, it was one implied by law. *See Capital Bank v. MVB, Inc.*, 644 So. 2d 515, 518 (Fla. Dist. Ct. App. 1994) ("Courts have found a fiduciary relation implied in law when 'confidence is reposed by one party and a trust accepted by the other.' "). Further, as both parties recognize, in a typical lender/borrower relationship the lender owes no fiduciary duty to the borrower. *Id.* ("Generally, the relationship between a bank and its borrower is that of creditor to debtor, in which parties engage in arms-length transactions, and the bank owes no fiduciary responsibilities.").

Under Florida law "special circumstances" may imply duties beyond a typical lender/borrow relationship when there are certain facts outside of a typical loan transaction which underlie the parties' relationship. *See Barnett Bank of W. Florida v. Hooper*, 498 So. 2d 923, 925 (Fla. 1986) (holding that special circumstances can result in a bank's duty to disclose otherwise confidential

facts about its relationship with other customer); *Capital Bank*, 644 So. 2d at 520 (noting circumstances that can transform traditional lender/borrower relationship into a fiduciary relationship). Two of the recognized instances when a lender/borrower relationship fall into these special circumstances include when a lender "receives any greater economic benefit than from a typical transaction" or when the lender "gave the borrower financial advice concerning a possible investment" *SLM Fin. Corp. v. Castellano*, 2:11-CV-105-FTM-29, 2012 WL 717858, at *2 (M.D. Fla. Mar. 6, 2012) (citing *Watkins v. NCNB Nat'l Bank of Fla., N.A.*, 622 So.2d 1063, 1065 (Fla. 3d DCA 1993) and *Collins v. Countrywide Home Loans, Inc.*, 680 F. Supp. 2d 1287, 1297 (M.D. Fla. 2010) (applying Florida law)). While the exact character of Colonial's business recommendations is not clear, nor how extensive the greater financial benefit it received was, both are sufficiently alleged—accordingly the counterclaim is not due to be dismissed.

### b.  Motions to Strike Affirmative Defenses and Jury Demand

Rogers has pled the following affirmative defenses: (1) lack of standing; (2) failure to fulfill conditions precedent to filing suit; (3) equitable estoppel; (4) discharge by prior breach; (5) offset; (6) unclean hands, and in the same section she reserved the right to amend her answer to raise other claims and defenses. (Doc. 15 at 4-9). Additionally, her counterclaim includes a demand for trial by jury (*Id.* at 15). BB&T asks the Court to strike all of Rogers' affirmative defenses, her jury trial demand, and her reservation of the right to amend her pleadings. Striking an affirmative defense is appropriate when it appears that the defense cannot be successful under any set of facts a Defendant may be able to prove. *See Florida Software Systems v. Columbia/HCA Healthcare Corp.*, No. 97-2866-cv-T-17B, 1999 WL 781812, at *4 (M.D. Fla. Sept. 16, 1999) ("An affirmative defense will be found insufficient as a matter of law only if it appears that the Defendant could not succeed under any set of facts which it could prove." ).

First, the assertion that BB&T lacks standing is not an affirmative defense. Affirmative defenses admit the assertions in the complaint but avoid liability by asserting new facts showing excuse, justification, or some other negating matter. *Bluewater Trading LLC v. Willmar USA, Inc.*, No. 07-61284-CIV, 2008 WL 4179861 at * 1 (S.D. Fla. Sept. 9, 2008). Rogers' assertion that BB&T is not the true party in interest, and therefore lacks standing, is simply a denial that BB&T has the right to pursue this action—it does not assert an additional fact that exculpates Rogers from liability. While the Court will strike Rogers First Affirmative Defense, this has no impact on Rogers' ability to assert this defensive theory, it simply recognizes that it is not properly categorized.

The second affirmative defense asserts that the Plaintiff failed to properly accelerate the loan because it did not notify Rogers of her breach or allow her to cure the breach. First, Rogers own Counterclaim asserts that this lawsuit was precipitated when the loan reached maturity—thus there was no acceleration. (Doc. 15 at 8). Regardless, under the plain language of the loan documents, no such condition precedent was required to pursue an action on the Note or Pledge. The Note clearly states that "presentment, demand for payment, and notice of dishonor" have been waived. (Doc. 1-5 at 2). The Note's cure provision states that it does not apply to defaults of payment on the Note, so the opportunity to cure was not a condition precedent to the lawsuit. (*Id.* at 1). Further, the Pledge includes no such conditions precedent, it is triggered when there is a failure to make a payment under the terms of the Note. (*See* Doc. 1-6 at 2-3). Accordingly, Rogers own Counterclaim and the documents underlying this action preclude the applicability of this defense as asserted.

The Third, Fourth, Fifth, and Sixth affirmative defenses are predicated on the idea that Colonial had a duty to make provident loans to Rogers. (*See* Docs. 15 at 5-9; 23 at 7-8; 31 at 3-7). Rogers couches this purported duty within the "special circumstances" doctrine examined earlier. (*See* Doc. 31 at 3-7). Because this case sufficiently alleges special circumstances which may have

brought about additional duties on the part of Colonial, these affirmative defenses will not be stricken. However, the Court's partial denial of the Motion to Strike the Affirmative Defenses is issued without prejudice. It appears that these four affirmative defenses are, at base, the same as the counterclaim and once the parties have had the opportunity to engage in discovery, the Court will determine how the remaining affirmative defenses and counterclaim, if successful, would impact the ultimate outcome of the case.

On the other hand, Rogers "Reservation of Rights" to assert additional claims and defenses or amend the pleadings fails to assert a legal defense. Rogers' ability to amend her pleading is governed by the Federal Rules of Civil Procedure and this Court's orders—simply put, the reservation is not legally viable and merely clutters her responsive pleading. Accordingly, the reservation of rights will be stricken. *See Gonzalez v. Spears Holdings, Inc.*, 2009 WL 2391233, at *4 (S.D. Fla. 2009) ("This reservation of rights clause does not constitute an affirmative defense because it does not respond to the initial complaint or raise facts which negate Plaintiff's claims."). The Court notes that striking the "Reservation of Rights" does not preclude Rogers from seeking leave for future amendments should circumstances reveal that to be appropriate.

Rogers' jury demand must also be stricken as it is plainly precluded by the terms of the loan documents. This action is on the underlying Note and the Pledge and Colonial's purported duty that arose from that tansaction. (*See* Doc. 1 at 5-6 (asserting two counts based on the Note and "Pledge Agreement II"); Doc. 15). On a motion to strike a jury demand based on waiver, a Court must evaluate whether the waiver was entered knowingly, voluntarily, and intelligently. *Allyn v. W. United Life Assur. Co.*, 347 F. Supp. 2d 1246, 1252 (M.D. Fla. 2004). While five factors[8] are

---

[8] The factors are: (1) conspicuousness of the waiver provision in the contract; (2) sophistication and experience of the contracting parties; (3) opportunity to negotiate the contract

employed to evaluate jury waivers, the ultimate question is whether the waiver is "unconscionable, contrary to public policy, or simply unfair." *Id.* Both of the relevant provisions are unambiguous jury waivers which are set-off as individual paragraphs, written in full sized typeface, and are preceded by a heading that clearly indicates the function of the provision. (Docs. 1-5 at 1; 1-6 at 3). It is clear that Rogers did not have business experience that rivaled Colonial. However, nothing demonstrates that she was so naive as to invalidate the jury waivers. Likewise, it is clear that there was discussion between Rogers and Colonial representatives regarding the terms of the loans prior to her executing the documents—thus she had the opportunity to negotiate. Weighing in favor of discounting the waivers, Colonial had greater relative bargaining power, as Tyelle had already experienced difficulty securing financing. However, the discussion about securing the loans and the extensions of the loans occurred over a multiple meetings and if Rogers wanted advice of counsel on the loans, she could have procured it. While there is no doubt that Colonial had an advantage in its bargaining position here, the jury waiver provisions are not unconscionable or unfair. Accordingly, the jury waivers apply and the jury demand will be stricken. *See id.* at 1251-52.

Therefore, it is

---

terms; (4) the parties' relative bargaining power; and (5) whether the waiving party was represented by counsel. *Allyn*, 347 F. Supp. 2d at 1252.

**ORDERED,** the Motion to Dismiss the Counterclaim (Doc. 21) is **DENIED;** the Motion to Strike Affirmative Defenses (Doc. 23) is **GRANTED IN PART AND DENIED WITHOUT PREJUDICE IN PART**, the first and second affirmative defenses are stricken, as is the "Reservation of Rights;" and the Motion to Strike the Jury Demand (Doc. 24) is **GRANTED**.

**DONE** and **ORDERED** in Chambers, Orlando, Florida on May 16, 2014.

GREGORY A. PRESNELL
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Party