# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

**BRANCH BANKING AND TRUST COMPANY,**

      **Plaintiff,**

**v.**                                        **Case No:   6:13-cv-1983-Orl-31TBS**

**NATIONAL FINANCIAL SERVICES, LLC and BETTY ROGERS,**

      **Defendants.**

## ORDER

This matter is before the Court on Plaintiff Branch Banking and Trust Company's ("BB&T") Motion for Summary Judgment (Doc. 83) ("Motion"), Plaintiff's exhibits in support of the Motion, (Doc. 84), Defendant Betty Rogers' ("Rogers") Response in Opposition (Doc. 90) ("Response"), Defendant's exhibits in opposition to the Motion (Doc. 91), and Plaintiff's Reply (Doc. 92).

### I.  Background

This matter arises out of a loan issued by Colonial Bank ("Colonial") to Rogers prior to the 2009 collapse of Colonial and subsequent receivership by the Federal Deposit Insurance Corporation ("FDIC"). After the FDIC became receiver, BB&T acquired Colonial's assets that purportedly include the relevant papers underlying the loans to Rogers. BB&T is now pursuing this action on one of the two loans. The loan at issue started as a $600,000 line of credit ("Credit") that was converted to a term loan and documented by a promissory note ("Note") (Doc. 1-5). The term loan was secured by a pledge of Rogers' investment account[1] and annuity policy (the consumer pledge

---

[1] The investment account referenced by the Pledge is held by Defendant National Financial

agreement is the "Pledge") (Doc. 1-6[2]). The other loan was for the purchase of commercial real estate and was secured by a mortgage on that property as well as Rogers' other assets. Both were entered into around the same time and were part of the same series of discussions between Rogers and Colonial.

The loans were not for Rogers individually, rather they were for her daughter's businesses, one a tanning salon and the other a spa, both of which sought to expand. The tanning salon, Tyelle Enterprises, Inc. ("Tyelle"), however, was operating at a loss and having difficulty securing financing for the expansion. According to Rogers, representatives of Colonial discussed taking out a line of credit for Tyelle's expansion which could be secured by Rogers' investment account and her annuity insurance policy. Prior to finalizing the financing for the expansion, a branch manager for Colonial allegedly approached Rogers to discuss Tyelle purchasing a business condominium so it would not have to lease property. The Colonial manager "suggested to Defendant that her daughter's business should relocate to this business condominium so that it might own its own facility rather than lease." (Doc. 15 at 6-7). Colonial offered a separate loan to purchase the commercial property, which was secured in part by a mortgage on the property. Ultimately, neither Rogers nor her daughter's businesses could service either of the loans, and BB&T foreclosed on the real estate,[3] caused the insurance annuity to be surrendered, and is now pursuing this action on the Note and remaining collateral, the investment account.

---

Services, LLC.

[2] The operative document in this case is the second of two pledges. (*Compare* Docs. 1-4; 1-6).

[3] The pleadings assert that the real estate foreclosure action was brought in the Circuit Court for the Eighteenth Judicial Circuit in and for Brevard County, Florida, case number 2011-AC-113274. Because that case addressed the loan on the real property, while this case is addressing the business loan, the foreclosure matters do not impact the outcome of this case, the circumstances

Initially, Rogers defended the case and asserted a counterclaim against Plaintiff on the notion that the bank had breached a fiduciary duty to her. By order dated May 16, 2014 (Doc. 46), the Court denied Plaintiff's Motion to Dismiss the counterclaim, finding the allegations sufficient to support a "special circumstances" claim under the rationale of *Barnett Bank of West Florida v. Hooper*, 498 So. 2d 923, 925 (Fla. 1986). On September 15, 2014 Defendant filed a motion to amend her answer, substituting two new defenses: (1) that the bank had approved the loan based on a forged credit application and (2) that the bank had agreed to settle the debt for $80,000.00. (Doc. 63). By Order dated October 2, 2014, the Court denied that motion as untimely and futile. (Doc. 70).[4]

BB&T filed its Motion for Summary Judgment on October 28, 2014 (Doc. 83), contending that the record evidence negates a special circumstance case. In her response, Defendant abandoned her "Special Circumstance" fiduciary duty claim

**II.   Standard**

A party is entitled to summary judgment when the party can show that there is no genuine issue as to any material fact. Fed.R.Civ.P. 56. Which facts are material depends on the substantive law applicable to the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The moving party bears the burden of showing that no genuine issue of material fact exists. *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir.1991).

When a party moving for summary judgment points out an absence of evidence on a dispositive issue for which the nonmoving party bears the burden of proof at trial, the nonmoving party must "go beyond the pleadings and by [his] own affidavits, or by the depositions, answers to

---

surrounding the creation of the real estate loan, however, do impact this case.

[4] Rogers' renewed motion to amend, (Doc. 76) construed as a motion for reconsideration, which was also denied. (Doc. 82).

interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324-25 (1986) (internal quotations and citation omitted). Thereafter, summary judgment is mandated against the nonmoving party who fails to make a showing sufficient to establish a genuine issue of fact for trial. *Id.* at 322, 324-25. The party opposing a motion for summary judgment must rely on more than conclusory statements or allegations unsupported by facts. *Evers v. Gen. Motors Corp.*, 770 F.2d 984, 986 (11th Cir. 1985) ("conclusory allegations without specific supporting facts have no probative value").

### III.     Analysis

The record evidence submitted by Plaintiff establishes that Defendant owes Plaintiff the amount outstanding on the term loan for the initial principal balance of $581,999.41 that is now mature and unpaid. In her response to the motion for summary judgment, Defendant makes no effort to support the "special circumstances" fiduciary duty claim. Instead, Defendant relies solely on the belated settlement defense, which the Court has previously rejected. Accordingly, Plaintiff's motion for summary judgment is due to be granted.

It is therefore

**ORDERED** that Plaintiff's Motion for Summary Judgment (Doc. 83) is **GRANTED.** Pursuant to the Joint Stipulation between Defendant National Financial Services, LLC ("NFS") and BB&T, NFS is ordered to liquidate the securities in the Defendant's account and deliver the proceeds and cash into the registry of the Court within ten (10) days. The Court retains jurisdiction to enter a final deficiency judgment.

**DONE** and **ORDERED** in Chambers, Orlando, Florida on January 9, 2015.



_____
GREGORY A. PRESNELL
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Party