**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

**BRANCH BANKING AND TRUST**
**COMPANY,**

                **Plaintiff,**

**v.**                                          **Case No:   6:13-cv-1983-Orl-31TBS**

**NATIONAL FINANCIAL SERVICES,**
**LLC and BETTY ROGERS,**

                **Defendants.**

_____

## ORDER

This matter is before the Court on Plaintiff Branch Banking and Trust Company's ("BB&T")

Amended Motion for Deficiency Judgment (Doc. 118), Defendant Betty Rogers' Response in

Opposition (Doc. 124), and BB&T's Reply in Support (Doc. 129).

    **I.**      **Introduction**

This matter arises out of a relatively simple action on a promissory note and pledge of an

investment account, which, through the efforts of Defendant's counsel, resulted in substantial

complexity and sufficient motion practice to grow the docket to 130 entries (as of the date of this

Order). The background is straightforward, Defendant Betty Rogers, on behalf of her daughter's

business, secured several business loans with her personal accounts, one of them was an investment

account held by National Financial Services, LLC ("National"). The business and Rogers failed to

timely make payments on the loans, causing defaults, and entitling BB&T to have the proceeds from

Rogers' account assigned to her. The Court found that BB&T was entitled to summary judgment in

its favor, (Doc. 97) and National Financial Services, LLC, having previously agreed to turn over the

collateral, has already deposited the proceeds from the account in the Court's registry. (*See* Doc. 103). What remains now is the deficiency.

While the motion itself is for deficiency judgment, including $835,986.49 in unpaid principal, late fees, and interest, the gravamen of the present dispute is over the claim for $234,402.97 in attorney's fees and costs.

**II.  Analysis**

Plaintiff, having prevailed at summary judgment, asserts a claim for attorney's fees and costs pursuant Article 9 of Florida's Uniform Commercial Code ("UCC") and the terms of the loan documents. The Florida UCC provides, in pertinent part:

> 679.608 Application of proceeds of collection or enforcement; liability for deficiency and right to surplus.—
>
> (1) If a security interest or agricultural lien secures payment or performance of an obligation, the following rules apply:
>
> > (a) A secured party shall apply or pay over for application the cash proceeds of collection or enforcement under s. 679.607 in the following order to:
> >
> > > 1. The reasonable expenses of collection and enforcement and, to the extent provided for by agreement and not prohibited by law, reasonable attorney's fees and legal expenses incurred by the secured party;
> > >
> > > 2. The satisfaction of obligations secured by the security interest or agricultural lien under which the collection or enforcement is made; …

The Consumer Pledge Agreement and Promissory Note on which this action was based provide for a similar entitlement to attorney's fees and costs.[1]

---

[1] The Consumer Pledge Agreement states:

Attorneys' Fees; Expenses. I agree to pay all of Lender's costs and expenses, including Lender's reasonable attorneys' fees and Lender's legal expenses incurred in connection with the enforcement of this Agreement. Lender may hire or pay someone else to help enforce this Agreement or to collect the Indebtedness, and I shall pay the costs and expenses of such enforcement. Costs and expenses include Lender's reasonable attorneys' fees and legal expenses whether or not there is a

## A. Fees

Rogers does not dispute that BB&T is entitled to attorneys' fees, only the amount that is owed. Specifically, the Response argues that the number of hours BB&T's counsel billed is excessive and should be reduced in calculation of the awardable fees.

Courts in this Circuit apply the lodestar fee calculation method, multiplying the reasonable hours expended by the reasonable hourly rates. *Norman v. Housing Authority of City of Montgomery*, 836 F.2d 1292, 1301 (11th Cir. 1988). The reasonable hourly rate is the prevailing market rate in the relevant legal community for similar services by lawyers of comparable skill, experience and reputation. *See Blum v. Stenson*, 465 U.S. 886, 888-89 (1984). In determining what constitutes a "reasonable" hourly rate and what number of compensable hours is reasonable, the Court may consider the 12 factors set forth in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717–19 (5th Cir. 1974).[2] *See Farley v. Nationwide Mut. Ins. Co.*, 197 F.3d 1322, 1340 (11th

---

> lawsuit . . . . I also shall pay all court costs, in addition to all other sums provided by law. This agreement also secures all of these amounts.

(Doc. 1-6 at 3 (two consumer pledge agreements were attached to the Complaint, the second, quoted above, was from Rodger's re-pledge of the underlying investment account and the basis for Count II of the Complaint)).

The Promissory Note states:

> ATTORNEYS' FEES; EXPENSES. Lender may hire or pay someone else to help collect this Note if I do not pay. I will pay Lender the amount of these costs and expenses, which includes, subject to any limits under applicable law, Lender's reasonable attorneys' fees and Lender's legal expenses whether or not there is a lawsuit. . . . If not prohibited by applicable law, I also will pay any court costs, in addition to all other sums provided by law.

(Doc. 1-5 at 1).

[2] The factors are: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the

Cir. 1999). The movants bear the burden of documenting the hours expended and hourly rates. *See Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983)). "The court . . . is itself an expert on the question and may consider its own knowledge and experience concerning reasonable and proper fees and may form an independent judgment either with or without the aid of witnesses as to value." *Norman v. Hous. Auth. of City of Montgomery*, 836 F.2d 1292, 1303 (11th Cir. 1988) quoting *Campbell v. Green*, 112 F.2d 143, 144 (5th Cir.1940) (Sibley, J.). Once the Court determines the lodestar, it may adjust the amount upward or downward based upon a number of factors, including the results obtained. *Norman*, 836 F.2d at 1302.

In this case, the Plaintiff's attorneys' discounted rates are not challenged, and the Court finds them to be reasonable. The only challenge is to the number of hours billed. With regard to analyzing the number of hours billed, the Eleventh Circuit stated:

> The first step in determining the proper lodestar amount is calculating the number of hours reasonably expended on the litigation. Prevailing plaintiff's attorneys "must exercise their own billing judgment to exclude any hours that are 'excessive, redundant, or otherwise unnecessary.' " [*Resolution Trust Corp. v. Hallmark Builders, Inc.*, 996 F.2d 1144, 1149 (11th Cir. 1993) (per curiam)] (quoting *Hensley*, 461 U.S. at 434[]). Attorneys may bill adversaries for only the same hours they would bill a client. *Id.* Similarly, "*a court* may reduce excessive, redundant or otherwise unnecessary hours in the exercise of billing judgment." *Perkins v. Mobile Hous. Bd.*, 847 F.2d 735, 738 (11th Cir.1988) (emphasis added). If the court concludes that the number of claimed hours is excessive, it may engage in "an across-the-board cut," so long as it provides adequate explanation for the decrease. *Bivins v. Wrap it Up, Inc.*, 548 F.3d 1348, 1350 (11th Cir. 2008) (per curiam).

*Galdames v. N & D Inv. Corp.*, 432 F. App'x 801, 806 (11th Cir. 2011).

Plaintiff's counsel's office assigned two partners at the law firm of Garbett, Stiphany, Allen & Roza, P.A. who both practice complex civil litigation and whose combined fees account for

---

amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

roughly 89% of the attorneys' fees sought in this case. Mr. Garbett, a partner with 32 years of litigation experience billed a total of 142.4 hours on the matter, while Ms. Dombovary a commercial litigator with ten years of experience billed 439.5 hours. As the Defendant's Response points out, frequently Mr. Garbett was reviewing or revising work done by Ms. Dombovary. Some specific examples include both Mr. Garbett and Ms. Dombovary putting in a combined 7.2 hours of work into drafting a mediation summary in June 2014. (Doc. 119-2 at 40-41). Mr. Garbett also seemed relatively involved with Ms. Dombovary's discovery practice. (*See* Id. 43-44). Finally, Mr. Garbett and Ms. Dombovary both billed for discussions with their client regarding settlement. (Id. at 67).

It is certainly the case that some measure of coordination and review is required by the partners overseeing the litigation. Further, Defendant's own litigation strategy likely prompted the need for much of the coordination, as the Defendant attempted to shift defensive strategy mid-case when the initial theories appeared to be ineffectual. However, while these billing events, and other more picayune tasks represent the normal and responsible management of a case, the Court finds that these are the type that are ordinarily discounted on bills to a client, particularly when two partners are assigned to a file. Accordingly, having reviewed the billing records, the Court finds that a 10% reduction is appropriate in the number of hours billed by Mr. Garbett and Ms. Dombovary. Accordingly, the fees awarded shall be:

| Professional | Title | Total Hours Billed | Reduced Hours | Hourly Rate | Total |
|---|---|---|---|---|---|
| David S. Garbett | Partner | 147.90 | 14.8 | $400 | $53,240 |
| Elizabeth B. Dombovary | Partner | 432.6 | 43.3 | $300 | $116,790 |
| Jonathan H. Kaskel | Associate | 79.8 | N/A | $275 | $23,382.92 |
| Gemma Guzman | Paralegal | 14.4 | N/A | $150 | $2,160 |
| Ivonne Herrera | Paralegal | 7.2 | N/A | $175 | $1,260 |
| Janelle Baskerville | Paralegal | 40.5 | N/A | $108 | $4,374 |

| | | | | Total: | $201,206.92[3] |
|---|---|---|---|---|---|

**B.  Costs**

The Plaintiff is entitled to costs under both 28 U.S.C. § 1920 and the agreements that formed the basis of the case. While the Court has discretion to award the costs pursuant to § 1920, the language in the Consumer Pledge and Promissory note is unequivocal, all "legal expenses" are awardable to the prevailing party in a suit such as this. Notably, the Defendant does not even offer argument against an award of costs under the contract language, only against an award under § 1920. Accordingly, the requested costs of $14,286.05 shall be awarded to Plaintiff.

As all other amounts of the claimed deficiency are undisputed, they too shall be awarded.

It is hereby,

**ORDERED,** that BB&T's Motion for Deficiency Judgment (Doc. 118) is **GRANTED.** The Court will enter judgment separately.

**DONE** and **ORDERED** in Chambers, Orlando, Florida on April 23, 2015.



_____
GREGORY A. PRESNELL
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Party

---

[3] The Plaintiff's fee table requested a total of $220,116.92. (Doc. 118 at 4). However, when the Court summed the fee column, the total was $217,116.92. This discrepancy appears to have come from a typographical error in the fee column for Mr. Garbett. His 147.9 hours multiplied by his asserted rate of $400 results in a product of $59,160, but the amount listed is $56,160. However, the total fees requested, $220,116.92 includes the $3,000 missing from Mr. Garbett's row.